UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDRICK R. KERN, | ) NO. CV 13-4000-AS |
| ) | |
| Plaintiff, | ) **MEMORANDUM AND OPINION** |
| ) | |
| v. | ) |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| ) | |
| Defendant | ) |

**PROCEEDINGS**

On September 22, 2010, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Docket Entry No. 3). On August 21, 2013, the matter was transferred and referred to the current Magistrate Judge. (Docket Entry No. 15). On November 20, 2013, Defendant filed an Answer and the Administrative Record

1

("A.R."). (Docket Entry Nos. 21, 22). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 17, 18). On February 24, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 25). The Court has taken this matter under submission without oral argument. See L.R. 7-15; "Case Management Order," filed June 11, 2013. (Docket Entry No. 7).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, a former delivery driver, garbage collection driver, and security guard (A.R. 17, 122), asserts disability beginning July 23, 2010, based on alleged physical impairments following an injury to his left hand. (Id. 10, 132). The Administrative Law Judge, David G. Marcus ("ALJ"), examined the record and conducted an administrative hearing on March 14, 2012. (Id. 31-53). The ALJ heard testimony from Plaintiff and vocational expert ("VE") Ronald K. Hatakeyama. (Id.). Plaintiff was represented by counsel at the hearing. (Id.).

The ALJ followed the five-step evaluation process for determining whether a claimant is disabled set forth in 20 C.F.R. § 404.1520, and made the following findings: (1) Plaintiff has the following severe medically determinable impairments: complex injury to the left hand with index finger fracture, status post surgical procedures to the left index finger, long finger, and ring finger. He also determined that Plaintiff had the non-severe conditions of

2

hypertension, and major depressive disorder, recurrent, severe with psychosis. (Id. 12-13); (2) Plaintiff's impairments do not meet or equal a listing impairment (Id. 14); (3) Plaintiff retains the residual functional capacity ("RFC") to perform less than the full range of medium work and can lift and carry fifty pounds occasionally, twenty-five pounds frequently with the use of the right (non-dominant) hand but the use of his left hand is limited to occasional gross manipulation and he is precluded from fine manipulation with the left hand. (Id. 14); (4) Plaintiff lacks the RFC to perform his past relevant work (Id. 17); and (5) Plaintiff is able to perform jobs consistent with his age, education, work experience, and RFC that exist in significant numbers in the national economy. Relying on the VE's testimony, the ALJ determined that Plaintiff was able to perform such light and unskilled work as information clerk (Dictionary of Occupational Titles ("DOT") No. 237.367-018); office helper (DOT No. 239.567-010); and mail sorter (DOT No. 209.687-026). (Id. 18). The VE testified that these positions did not require Plaintiff to use his left hand. (Id. 51-52). In making these findings, the ALJ found Plaintiff's allegations and testimony regarding the intensity, persistence, and limiting effects of his symptoms to be less than fully credible. (Id. 14-17).

Accordingly, the ALJ found that Plaintiff was not disabled at any time from the alleged disability onset date through the date of the ALJ's decision. (Id.).

**PLAINTIFF'S CONTENTION**

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility and failed to provide clear and convincing reasons for rejecting Plaintiff's testimony. (Joint Stip. 4).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision

simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion."  Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same).  However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim.  See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

**APPLICABLE LAW**

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)).  The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability.  20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity.  Id. § 404.1520(a)(4)(i).  "Substantial gainful activity" is defined as

"work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling him to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must

determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all his impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether - taking into account the claimant's age, education, work experience and RFC - there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Tackett, 180 F.3d at 1098.

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[1] legal error.

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision (continued...)

**A.  The ALJ Did Not Materially Err in Evaluating Plaintiff's Credibility**

Where, as here, the ALJ finds that a claimant suffers from a medically determinable impairment that could reasonably be expected to produce his or her alleged symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the individual's symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  This requires the [ALJ] to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effect."  Soc. Sec. Ruling ("SSR") 96-7p.

An ALJ's assessment of a claimant's credibility is entitled to "great weight."  Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). The ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings.  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); see also Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (reaffirming same); but see Smolen, 80 F.3d at 1283-84 (indicating that ALJ must provide "specific, clear and convincing reasons to reject a claimant's testimony where there is no evidence of malingering); see Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.

---

[1](...continued)
will not be reversed for errors that are harmless).

1990).[2] Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also SSR 96-7p.

In the present csae, the ALJ stated sufficient reasons for deeming Plaintiff's testimony about the limiting effects of his symptoms less than fully credible. Plaintiff's left hand was injured when it was struck by an oncoming vehicle on July 23, 2010 and Plaintiff contended that the resulting nerve damage had left him unable to move his left hand and limited his ability to work. (Id. 14). Plaintiff complained of persistent pain and stiffness in his left hand and testified to the following limitations:

---

[2] In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. See, e.g., Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v. Comm'r, 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine v. Comm'r, 574 F.3d 685, 693 (9th Cir. 2009); Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases). As set forth infra, the ALJ's findings in this case are sufficient under either standard, so the distinction between the two standards (if any) is academic.

> [H]is left hand is stiff, somewhat swollen, and he is unable to close his fist or completely straighten his fingers. He also has sensitivity to touch. He can grip a glass, but, his hand goes numb and tingles. He said that although he has no pain, tingling sometimes interferes with sleeping. He uses his right hand to attend to personal care and dressing himself. In addition, he stated that he does not know how much weight he can lift, but when lifting, he uses his right hand and wrist to assist the left hand with it. The claimant added that although he can no longer hold a pen in his left hand, his right hand writing skills are improving.

(A.R. 15).

After considering the record and the testimony presented at the hearing, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms "not credible to the extent they are inconsistent with" the ALJ's RFC. (A.R. 15). The ALJ gave the following reasons for deeming Plaintiff's testimony less than fully credible: (1) the objective medical evidence, including the opinions of medical experts, does not fully support Plaintiff's subjective complaints or his claim that his injury is disabling;[3] (2) Plaintiff's condition had

---

[3] The parties develop these reasons slightly differently: Plaintiff claims the ALJ discounted his credibility because of (1) lack of objective evidence; (2) normal level of daily activities; and (3) Plaintiff's efforts to work. (Joint Stip. 6). Defendant (continued...)

improved with conservative treatment and had been effective in controlling his symptoms; and (3) Plaintiff's activities of daily living, including his efforts to obtain a GED and vocational training through a county work program, and his efforts to find a job belie Plaintiff's claim that he is not able to work. (Id. 15-16).

The Court finds that the ALJ stated legally sufficient reasons for his adverse credibility finding.

**1. Objective Medical Evidence**

Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Lack of supporting objective medical evidence is a key consideration for the ALJ in evaluating credibility. See 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4) (in determining disability, an ALJ must evaluate a claimant's statements about the intensity, persistence and limiting effects of her symptoms "in relation to the objective medical evidence and other evidence").

---

[3](...continued)
contends Plaintiff's credibility was discounted because (1) specific medical evidence contradicted Plaintiff's claim his injury was disabling; (2) objective evidence failed to support Plaintiff's allegations; and (3) Plaintiff's activities of daily living, including learning to drive a forklift, undermined his claim of disability. (Id. 9). The Court's formulation takes all of these into account.

11

Here, after reviewing the medical records, including the records of Plaintiff's treating orthopedist and physical therapist, the consultative examining orthopedist, and the reviewing physician, the ALJ found that the "[o]bjective medical evidence does not fully support the claimant's complaints" of total disability. (A.R. 15). He also found that Plaintiff's testimony "is generally credible in light of the objective medical evidence and the medical opinions of record." (Id. 16). The record supports these findings.

After Plaintiff's left hand was struck by an oncoming vehicle on July 24, 2010, he underwent surgery for a complex injury of that hand. (Id. 161-220). Following surgery, he had several follow-up appointments, including examinations and x-rays. (Id. 221-26, 230-37). On July 27 2010, the treating orthopedist, Gary Y. Chen, M.D., noted that Plaintiff was in "significant distress due to significant swelling of the left hand, continued numbness in the index and the long finger and partial numbness in the ring finger." (Id. 221). He was given pain medication and referred for occupational therapy. (Id.). On August 31, 2010, an x-ray showed that the hand was healing well. (Id. 223). On November 10, 2010, the treating doctor noted that the swelling was decreasing, and that while there was still significant finger joint stiffness, sensation to the fingertip was improving. (Id. 225). Progress notes dated January 26, 2011 show left hand swelling with decreased range of motion. (Id. 230).

Plaintiff started physical therapy in November 2010 and

continued until January 2012 when his Medi-Cal funding expired. (Id. 41-42, 332-37). The therapist initially noted severely decreased range of motion and strength in the left hand, scar tissue formation, and tightening across the palm. (Id. 333). By the fall of 2011, Plaintiff was still complaining of chronic pain in the left hand, and physical examination showed edema, sensitivity to light touch with pain, deformity, and contracture. (Id. 316, 320). However, the physical therapist's notes indicated that Plaintiff's pain was lessening and slowly improving (Id. 343-45), and that his treating doctor had recommended that he see an orthopaedic surgeon. (Id. 346). Plaintiff testified that the swelling in his hand had "just recently went down" and that because of this, he had been able to use his hand "somewhat" since March 2011. (Id. 41). Plaintiff also acknowledged that he was planning to see an orthopaedic specialist to consider additional surgery. (Id. 38).

In February 2011 Plaintiff underwent a consultative orthopedic examination with Payam Moazzaz, M.D. (Id. 238-42). Dr. Moazzaz noted that Plaintiff had limited motion in the four fingers of his left hand, some swelling over the left hand and fingers, some flexion contractures and diminished sensation. (Id. 238-40). Physical examination of Plaintiff's upper extremities showed his nerves are intact bilaterally, and deep tendon reflexes and motor functioning also were intact. (Id. 241). Based on his examination, Dr. Moazzaz concluded that Plaintiff can lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk eight hours out of an eight-hour workday, sit eight

hours out of an eight-hour workday, and that climbing, stooping, kneeling, and crouching can be done frequently. (Id.). Dr. Moazzaz found no restriction with overhead activity or the use of Plaintiff's right hand, but limited Plaintiff's use of his left-hand: "[G]ross manipulative movements may be done frequently and use of the left hand for fine manipulative movements may be done occasionally." (Id.).

On March 22, 2011, consulting physician R. Halpern, M.D., reviewed the record and concurred with Dr. Moazzaz' opinion. (Id. 245-50).

The ALJ found Dr. Moazzaz' opinion to be well supported by diagnostic findings and clinical data, and noting Dr. Moazzaz' Board certification as an orthopedic surgeon, the ALJ accorded "significant weight" to Dr. Moazzaz' opinion. (Id. 16-17). The ALJ also found that the opinion of consulting physician, R. Halpern, M.D., was entitled to "some weight" because it was consistent with Dr. Moazzaz' opinion and with the other available medical records. (Id. 16). However, despite the weight assigned to Dr. Moazzaz' and Dr. Halpern's opinions, the ALJ took Plaintiff's testimony regarding the limiting effect of his symptoms into account, gave Plaintiff the benefit of the doubt and "adopted a more restrictive" RFC than otherwise indicated by the conclusions reached by the Drs. Moazzaz and Halpern. (Id. 17). Contrary to their determination that Plaintiff could frequently use his left hand for gross manipulative movements and occasionally for fine manipulative movements, the ALJ's RFC finding was that Plaintiff's

use of his left hand was limited to "occasional gross manipulation" and that he was entirely "precluded from fine manipulation with the left hand." (Id. 14).

The Court's review of the record shows that substantial evidence supports the ALJ's analysis of the objective medical evidence and his finding that it did not support Plaintiff's claim of total disability. Although there is nothing in the record to support Plaintiff's claim that he is totally disabled, the record is consistent with Plaintiff's subjective complaints of left-hand pain, sensitivity, numbness, tingling, and inability to fully use that hand for lifting or fine manipulations and the ALJ took these factors into account in determining Plaintiff's RFC. This was a clear and convincing reason for discounting Plaintiff's credibility. See Batson v. Commissioner, 359 F.3d 1190, 1196-97(9th Cir. 2004) (ALJ's credibility determinations affirmed where ALJ relied on opinions of consulting doctors and claimant's testimony was unsupported by either objective medical evidence or any persuasive reports from treating doctors).

Moreover, as discussed below, this was not the sole legally sufficient reason for discounting Plaintiff's credibility. See Robbins v. Social Security Administration, 466 F.3d 880, 883 (9th Cir. 2006)(ALJ may cite the medical record in concert with other factors in assessing a claimant's credibility).
///
///

15

### 2. Improvement with Conservative Treatment

Stating that his RFC assessment was based upon the substantial weight of the objective medical evidence including Plaintiff's course of treatment (id. 17 (citation omitted)), the ALJ's credibility assessment also relied on the fact that Plaintiff continued to receive "conservative treatment measures such as physical therapy, [and] paraffin and acupuncture massage," as recommended by Dr. Chen, and that as noted by Plaintiff's physical therapist, "the intensity of [Plaintiff's] pain is lessening and slowly improving." (Id. 16 (citation omitted)).

The ALJ was entitled to discount Plaintiff's credibility based on his positive response to conservative treatment. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain"); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed).

This was a clear and convincing reason to discount Plaintiff's credibility.

### 3. Activities of Daily Living and Job Search

The ALJ also discounted Plaintiff's credibility to the extent that his complaints of being unable to work were inconsistent with

16

his reported activities of daily living, including obtaining educational and vocational training, and a continued job search. (Id. 16). As set forth below, the ALJ's reasons were clear and convincing and supported by the record.

For instance, the ALJ noted that Plaintiff had been attending school in order to obtain his GED and to obtain vocational training. (Id.). Plaintiff testified at the hearing that he hoped "that getting a GED will lead to a better job." (Id. 39). Plaintiff stated that he had recently obtained a forklift driver's license, and was "in the process" of getting ready to be certified as a forklift operator. (Id.). He testified that the forklifts were such that he "could just work it with one hand and also . . . I can do the levers with basically one hand." (Id. 47-48). Plaintiff stated that he had applied for a forklift driver position at a recent job fair since he was about to be certified, and "was just trying to get everything prepared for when I do get out of the class." (Id. 47). The ALJ noted Plaintiff has a valid California driver's license with no restrictions. (Id. 16 (citing id. 244)).

The ALJ found that Plaintiff's activities tend to show not only that Plaintiff is capable of performing work in accordance with the RFC described, but also that Plaintiff's proactive efforts to find work demonstrate that he believes he is capable of working which undermines his subjective complaints. (Id.). The ALJ properly concluded that Plaintiff's activities of daily living detracted from his credibility. Plaintiff's limitations regarding the use of his left hand had not prevented him from attending

classes at least two times a week and possibly more,[4] obtaining a forklift driver's license or certification, or from driving and operating the control levers of a forklift.[5]  (Id. 47-48).  These activities are inconsistent with Plaintiff's claim he is precluded from work and the ALJ properly relied on this as a factor to discount Plaintiff's credibility.  Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (claimant attending classes three days a week weighed against allegations of inability to perform all work); see also Batson v. Commissioner, 359 F.3d 1190, 1196 (9th Cir. 2004)(ALJ may reject claimant's reports of daily activities to the extent they are inconsistent with an allegation of disability); and Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.").

The ALJ also properly concluded that Plaintiff's search for employment detracted from his credibility.  Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009) (the fact that a claimant has

---

[4] Plaintiff testified that he attends school to obtain both his GED and his forklift operating certification and that "on Tuesdays and Thursday nights my class is training on the forklift itself in class."  (A.R. 39, 48).

[5] Plaintiff also testified that although it hurts to lift or carry things with his left hand (A.R. 44), and he cannot hold a pen in his left hand (id. 47), with regard to lifting and carrying he was "still pretty normal . . . with [his] right hand" (id. 45), and able to use it to dress, bathe, and fasten buttons (id. 40).

sought out employment weighs against a finding of disability); Sample v. Schweiker, 694 F.2d 639, 642, 643 (9th Cir. 1982) (ALJ entitled to accept admission that claimant actively looking for work to be a tacit admission that he could perform substantial gainful activity); Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (plaintiff's job search efforts discredited his allegations of disability).

The reasons given by the ALJ for discounting Plaintiff's credibility sufficiently allow the Court to conclude that the ALJ discounted Plaintiff's credibility on permissible grounds. The Court therefore defers to the ALJ's credibility determination. See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1464 (9th Cir. 1995). Where the ALJ has made specific findings justifying a decision to disbelieve Plaintiff's symptom allegations and those findings are supported by substantial evidence in the record, "we may not engage in second guessing." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

///
///
///

19

**CONCLUSION**

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 15, 2014.

                                    /s/
                                    ALKA SAGAR
                                    UNITED STATES MAGISTRATE JUDGE